USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/31/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
    KAREN REED,
                                   Plaintiff,
                    -against-
    NIKE, INC., et al.,
                               Defendants.
------------------------------------------------------------- X

17 Civ. 7575 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Karen Reed brings this action against her former employer, Nike, Inc. ("Nike"), her former supervisors Esther Benatar and Eugene Purtell, and Brian Forde, a former Vice President of Sales at Nike. Plaintiff asserts (1) discrimination, failure to accommodate and retaliation claims under the New York City Human Rights Law, Administrative Code of the City of New York § 8-101 *et seq.* ("NYCHRL"), (2) retaliation and interference claims under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and (3) Consolidated Omnibus Budget Reconciliation Act ("COBRA") notification and denial of continuing coverage claims under the Employee Retirement Income Security Act, 28 U.S.C. § 1001 *et seq.* ("ERISA"). Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed herein, Defendants' motion for summary judgment is GRANTED with respect to the FMLA interference claim and is DENIED as to all other claims.

I. **STANDARD**

       Summary judgment is appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 148 (2d Cir. 2017).

The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *accord Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017). When the movant has properly supported its motion with evidentiary materials, the opposing party may establish a genuine issue of fact only by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original); *accord Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 408 (S.D.N.Y. 2018).

## II. DISCUSSION

### A. NYCHRL - Discrimination

The NYCHRL prohibits employers and their agents from discharging or otherwise discriminating against an employee on the basis of the employee's "actual or perceived . . . disability." N.Y.C. Admin. Code § 8-107(1)(a). Depression constitutes a disability for purposes of the NYCHRL. *See Ugactz v. United Parcel Serv., Inc.*, No. 10 Civ. 1247, 2013 WL 1232355, at *14 (E.D.N.Y. Mar. 26, 2013). To prevail on an NYCHRL discrimination claim, "the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir.

2

2013). "[T]he plaintiff must establish a prima facie case, and the defendant then has the opportunity to offer legitimate reasons for its actions. If the defendant satisfies that burden, summary judgment is appropriate if no reasonable jury could conclude either that the defendant's reasons were pretextual, or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on discrimination." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75–76 (2d Cir. 2015) (internal citations and quotation marks omitted). A defendant is entitled to summary judgment "only if the record establishes as a matter of law that discrimination played *no* role in its actions." *Mihalik*, 715 F.3d at 110 n.8 (alterations, quotation marks and citation omitted); *accord Feldesman v. Interstate Hotels LLC*, No. 16 Civ. 9352, 2019 WL 1437576, at *8 (S.D.N.Y. Mar. 31, 2019) ("[T]he question on summary judgment is whether there exist triable issues of fact that discrimination was *one* of the motivating factors for the defendant's conduct." (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 n.27 (1st Dep't 2009))). The NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik*, 715 F.3d at 109.

Summary judgment is denied with respect to the NYCHRL discrimination claim. The record does not establish, as a matter of law, that discrimination on the basis of Plaintiff's depression played no role in Defendants' actions. *See Mihalik*, 715 F.3d at 110 n.8. In 2013, 2014 and 2015, Purtell prepared Plaintiff's performance evaluations at the conclusion of the fiscal year ("FY"). Purtell testified that during this period, Plaintiff had recurring issues relating to timeliness, engagement and accuracy in the preparation of certain sales documents known as "AE Sheets." Despite these issues, Purtell rated Plaintiff "Successful" in the 2013, 2014 and 2015 evaluations, indicating that Plaintiff was achieving expectations overall.

Purtell's assessment of Plaintiff changed in the months following Plaintiff's FY 2015 evaluation. Purtell testified that between June 30, 2015, and December 9, 2015, he "started to notice [in Plaintiff] a level of detachment from the team and from the business." Purtell said that he observed Plaintiff "become a little bit more despondent," and "prone to emotional outbursts" and "crying." Purtell also said that Plaintiff began to withdraw from non-mandatory social events, and became "sad" and "less responsive." In a December 2015 e-mail to Julie Marquard in the human resources department, Purtell said that although Plaintiff had "successful" work results, she had begun to exhibit more frequent "emotional swings" and "crying episodes." Purtell noted in the e-mail that Plaintiff had experienced a significant personal loss, but said that "[o]ur business is evolving . . . faster than her ability to recover from her personal issues." Plaintiff testified that Purtell suggested she contact Nike's employee assistance program, although this is disputed by Defendants.

In December 2015, Purtell prepared Plaintiff's mid-year evaluation for FY 2016. Unlike in previous years, where Plaintiff was rated "Successful," Purtell now determined that Plaintiff was tracking an "Inconsistent" rating for the year. Purtell testified that Plaintiff's performance issues in the first half of FY 2016 were the same issues that Plaintiff had in FY 2013 and FY 2014 -- the difference was that in FY 2016, Plaintiff was exhibiting more emotional problems. Purtell testified that he decided on the "Inconsistent" rating after Marquard instructed him to "look closely" at "behavioral traits" in completing Plaintiff's evaluation.

On March 29, 2016, Purtell placed Plaintiff on a "Performance Action Plan" ("PAP"), a form of corrective action for employees who raise "significant performance concerns." In Plaintiff's year-end performance evaluation for FY 2016, she was rated "Inconsistent."

In light of the foregoing, a reasonable jury could find that Plaintiff was treated less well by Defendants, at least in part because of her depression, an impermissible discriminatory reason. *See Mihalik*, 715 F.3d at 110 n.8. Although Defendants have offered evidence that Plaintiff's performance issues contributed to her "Inconsistent" rating and placement on the PAP, they have not met their burden to establish, as a matter of law, "that discrimination played *no* role in [their] actions." *See id.*; *see also Rotger v. Montefiore Med. Ctr.*, No. 15 Civ. 7783, 2019 WL 1429556, at *11 (S.D.N.Y. Mar. 29, 2019) ("While the evidence in the record is not sufficient to show that Defendant's proffered explanations for these incidents of discipline were pretextual, Defendant . . . has not satisfied its burden on summary judgment of establishing that discrimination played *no* role in the employment action at issue." (quotation marks and citation omitted)).

Defendants argue that Plaintiff's purported lack of comparator evidence entitles them to summary judgment. This argument is unavailing, because comparators are not the only way for a plaintiff to prove that she was treated "less well, at least in part for a discriminatory reason." *Mihalik*, 715 F.3d at 110 n.8. For example, placement of an employee on a "performance improvement plan" can form the basis for liability under the NYCHRL, when such plan is "not something imposed upon every employee, . . . thus constitut[ing] a difference between [the employer's] treatment of [the plaintiff] and of employees not perceived as disabled." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015). Where a plaintiff has adduced sufficient evidence for a reasonable jury to find that discrimination was a motivating factor for the defendant's conduct, the absence of comparator evidence does not entitle the defendant to summary judgment. *See Gorman*, 146 F. Supp. 3d at 530. *See generally Mihalik*, 715 F.3d at 109 (2d Cir. 2013) (stating that the NYCHRL must be construed "broadly in favor of

discrimination plaintiffs, to the extent that such a construction is reasonably possible"); *accord Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S. 2d 112, 116 (1st Dep't 2011).

> B.     **NYCHRL - Failure to Accommodate**

The NYCHRL "requires that an employer make 'reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job . . . provided that the disability is known or should have been known by the [employer].'" *Romanello v. Intesa Sanpaolo, S.p.A.*, 998 N.E.2d 1050, 1053 (N.Y. 2013) (alteration in original) (quoting N.Y.C. Admin. Code § 8-107(15)(a)); *accord Lazzari v. N.Y.C. Dep't of Parks & Recreation*, 751 Fed. App'x 100, 102 (2d Cir. 2018) (summary order). It is the employer's burden "to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business." *Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 11 N.E.3d 159, 167 (N.Y. 2014); *accord Lazzari*, 751 Fed. App'x at 102. When an employee requests a specific accommodation, the NYCHRL "unquestionably forecloses summary judgment where the employer has not engaged in a good faith interactive process." *Jacobsen*, 11 N.E.3d at 169; *accord Watson v. Emblem Health Servs.*, 69 N.Y.S.3d 595, 598–99 (1st Dep't 2018).

Summary judgment is denied with respect to the failure to accommodate claim. Defendants have not shown that they engaged in an interactive process regarding Plaintiff's request for a mediation with Forde and Purtell. Plaintiff testified that she requested the mediation because, in conversations with Purtell about her performance, Purtell focused on Plaintiff's "mood," whether she was "happy . . . or not at work," and her "energy level" rather than on "business-related issues." A reasonable jury could find that Plaintiff requested the meeting as an accommodation to remediate the unwarranted focus her manager placed on her disability in workplace conversations. Defendants' alternate portrayal of the meeting as

6

Plaintiff's effort to "dispute the reasons for issuing a PAP or belatedly appeal a bad performance review" confirms the existence of disputed issues of material fact, precluding entry of summary judgment. While Plaintiff may not have presented the request for the meeting as a formal accommodation request, "a request for accommodation need not take a specific form" and "may be in plain English, need not mention the statute, or the term 'reasonable accommodation' and need not be in writing." *Phillips v. City of New York,* 884 N.Y.S.2d 369, 382 & n.24 (1st Dep't 2009).

Several courts have held that "even in the absence of a specific request," the NYCHRL creates "an independent, affirmative duty to investigate feasible accommodations." *See, e.g.*, *Cruz v. Schriro*, 36 N.Y.S.3d 407 (Table), 2016 WL 1173184, at *7 (N.Y. Sup. Ct. Mar. 24, 2016); *accord LaCourt v. Shenanigans Knits, Ltd.*, 966 N.Y.S.2d 347 (Table), 2012 WL 6765703, at *4 (N.Y. Sup. Ct. Nov. 14, 2012); *Nande v. JP Morgan Chase & Co.*, 851 N.Y.S.2d 59 (Table), 2007 WL 2792155, at *3 (N.Y. Sup. Ct. Sept. 21, 2007); *see also Haight v. NYU Langone Med. Ctr., Inc.*, No. 13 Civ. 4993, 2014 WL 2933190, at *17 (S.D.N.Y. June 27, 2014); *Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 417 (S.D.N.Y. 2014). Defendants point to no evidence that would preclude a reasonable jury from finding that Defendants failed to conduct such an investigation.

### C. NYCHRL - Retaliation

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citing *Albunio v. City of New York*, 947 N.E.2d 135, 138 (N.Y. 2011) and *Williams*, 872 N.Y.S.2d at 33-34); *accord Gachette v. Metro North-High Bridge*, 722 Fed.

App'x 17, 21 (2d Cir. 2018) (summary order). A plaintiff must establish that "there is a causal connection between the protected activity and the alleged retaliatory conduct." *Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.2d 789, 791 (2d Dep't 2013); *accord Feldesman*, 2019 WL 1437576, at *12. "[T]he plaintiff must establish a prima facie case, and the defendant then has the opportunity to offer legitimate reasons for its actions. If the defendant satisfies that burden, summary judgment is appropriate if no reasonable jury could conclude either that the defendant's reasons were pretextual, or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on [retaliatory motives]." *Chen*, 805 F.3d at 75–76 (internal citations and quotation marks omitted).

Summary judgment is denied with respect to the NYCHRL retaliation claim. On November 28, 2016, Plaintiff lodged a complaint regarding discriminatory treatment with Nike's human resources department -- a protected activity under the NYCHRL. *See Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 51 (S.D.N.Y. 2009) ("Raising concerns of discrimination to a human resources department is quintessential protected activity."). Plaintiff was terminated on November 30, 2016, two days later. Because of the particularly close temporal proximity between Plaintiff's protected activity and her termination, a reasonable jury could find that Plaintiff was terminated at least in part because of her complaint of discrimination. *See Krebaum v. Capital One, N.A.*, 29 N.Y.S.3d 351, 353 (1st Dep't 2016) (reversing grant of summary judgment to defendant and holding that "[t]he temporal proximity of plaintiff's complaint [to human resources] and the termination of his employment one month later indirectly shows the requisite causal connection"); *Kaplan v. N.Y.C. Dep't of Health & Mental Hygiene*, 38 N.Y.S.3d 563, 566 (2d Dep't 2016) (holding that plaintiff had adequately pled causation where she alleged "that her employment was terminated approximately two weeks after she informed [her

8

employer] of her claims and advised it of her intent to sue"); *Feliciano v. City of New York*, No. 14 Civ. 6751, 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) (stating that it is "well settled" that "mere temporal proximity" may demonstrate causation when the protected activity and adverse action occur "very close together" (quotation marks and citation omitted)); *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 296 (E.D.N.Y. 2010) (causation element established where "less than two months passed between plaintiff's [protected activity] and her termination").

Some courts have held that temporal proximity does not, in itself, establish causation. In *Forrester v. Corizon Health, Inc.*, 752 F. App'x 64 (2d Cir. 2018) (summary order), a Second Circuit panel held that "evidence of temporal proximity alone is not enough to demonstrate retaliation under the NYCHRL." *Id.* at 66. Although not binding as a summary order, *Forrester* is nonetheless persuasive precedent and warrants consideration. The court in *Forrester* based its holding on an earlier Second Circuit case, *Ya-Chen Chen v. City University of New York*. In *Chen*, a university decided not to reappoint an assistant professor shortly after she had engaged in protected activity. *See Chen*, 805 F.3d at 77. The Second Circuit held that "[u]nder these circumstances, the fact that [the plaintiff's] reappointment decision came soon after her [protected activity] is insufficient to support a claim of retaliatory discharge" under the NYCHRL. *See id.* Key to this holding were facts unique to the case, including that the university's reappointment committee made reappointment decisions for *all* of the assistant professors in the plaintiff's department on the same designated day. *See id.* at 68, 77. In this context, temporal proximity alone did not suffice to create a triable issue of fact as to retaliatory intent. But *Chen* cannot fairly be read to preclude categorically a plaintiff from establishing

9

causation based on temporal proximity, and to the extent that *Forrester* holds otherwise, the Court declines to follow this non-binding precedent.

Defendants argue that this case is analogous to *Cadet-Legros v. New York University Hospital Center*, 21 N.Y.S.3d 221 (1st Dep't 2015), in which the First Department affirmed the grant of summary judgment for Defendant where the plaintiff's termination had been "the culmination of continuous progressive discipline." *See id.* at 206–07. But in *Cadet-Legros*, the plaintiff engaged in "the same type of conduct that had previously produced final warnings and poor evaluations" *after* she engaged in the protected activity. *Id.* at 207. In this context the First Department held that the plaintiff had not established a causal connection between her protected activity and discharge. *Id.* Indeed, *Cadet-Legros* suggests that previous progressive discipline alone cannot negate causation for purposes of a NYCHRL retaliation claim. A complaint of discrimination, the First Department explained, "could be the 'extra factor' that pushes an employer from a posture of dissatisfaction with an employee to a determination to discharge the employee." *Id.* Accordingly, under the NYCHRL, "an employer cannot avoid scrutiny of its post-complaint conduct by virtue of having begun to discipline an employee pre-complaint." *Id.*

Defendants next quote *Melman v. Montefiore Medical Center*, 946 N.Y.S.2d 27 (1st Dep't 2012), stating that "an employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct." *Id.* at 42. In *Melman*, the actions that the plaintiff cast as "retaliation" were the defendant's "continu[ation] of the policies (e.g., paying him too little money and refusing to allow him to hire a uro-gynecologist) that had prompted him to complain in the first place." *Id.* That is, in *Melman*, the conduct the defendant engaged in before the protected activity was the

10

exact same conduct that the defendant engaged in after the protected activity. Here, the discipline imposed on Plaintiff before her protected activity (*e.g.*, warnings, placement on the PAP) is plainly different than the discipline imposed after her protected activity (*i.e.*, her termination).[1]

Defendants argue that Nike decided to terminate Plaintiff's employment *before* her November 28 complaint, and state that Plaintiff was suspended "pending termination" during her meeting with Forde and Benatar. But this characterization is inconsistent with some of the evidence in the record. For example, Benatar testified that, at the meeting, she told Plaintiff that they were "going to have [to] suspend you . . . and we're going to need some time to kind of think about what the next steps are." Likewise, Forde testified that Plaintiff was suspended at the meeting, and that the "move[] from suspension to termination" occurred at a later time. At best, Defendants have identified an issue of disputed fact regarding the timing of the termination decision.

Summary judgment also is unwarranted based on Defendants' asserted nondiscriminatory justifications for terminating Plaintiff's employment. Defendants assert that these justifications were Plaintiff's "poor performance, failure to engage respectfully and productively in discussions regarding her performance, refusal to accept responsibility for her deficiencies and violation of Nike's policy prohibiting corporate credit card use for personal expenses, Nike's discovery of multi-million dollar losses, and repeated complaints from internal partners and

---

[1] Defendants also cite *Clark County School District v. Breeden*, 532 U.S. 268 (2001), a case involving a Title VII retaliation claim. *See id.* at 269. *Breeden* does not supply the governing rule in this case because, as explained above, the NYCHRL requires a "liberal construction analysis in all circumstances," and such analysis "must be targeted to understanding and fulfilling . . . the [NYCHRL's] uniquely broad and remedial purposes, *which go beyond those of counterpart State or federal civil rights laws.*" *Bennett*, 936 N.Y.S. 2d at 116 (emphasis added) (quotation marks and citations omitted).

11

representatives from Nike's largest customer." But a reasonable jury could find these problems all existed well before the decision to terminate Plaintiff's employment. If a jury found that the termination decision was made only *after* Plaintiff lodged her complaint, they could reasonably find that the complaint was "the 'extra factor' that pushe[d] [Defendants] from a posture of dissatisfaction with [Plaintiff] to a determination to discharge [Plaintiff]." *Cadet-Legros*, 21 N.Y.S.3d at 207. Accordingly, summary judgment is denied with respect to the NYCHRL retaliation claim.[2]

### D. FMLA - Retaliation

"To establish a prima facie case of FMLA retaliation, a plaintiff must establish that 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016) (alterations omitted). A plaintiff need not establish "but for" causation to prevail on a FMLA retaliation claim -- rather, a plaintiff must show that her exercise of her rights under the FMLA was a "negative factor" in the adverse employment action. *See Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 169 (2d Cir. 2017).

---

[2] Defendants' assertion that Benatar, Purtell and Forde (the "Individual Defendants") cannot be held liable under the NYCHRL is unavailing. First, Defendants argue that the Individual Defendants cannot be liable under an aiding and abetting theory because "there is no basis to impose any liability against Nike" -- a prerequisite to individual liability. But, for the reasons explained above, a reasonable jury could find Nike liable under the NYCHRL for discrimination, failure to accommodate and retaliation. Second, Defendants assert that "Plaintiff lacks evidence sufficient to show that Benatar, Purtell and Forde individually engaged in discriminatory or retaliatory conduct." But a reasonable jury could find that Purtell's decision to place Plaintiff on the PAP constitutes discrimination under the NYCHRL, and there is evidence in the record that both Benatar and Forde participated in the decision to terminate Plaintiff's employment, which could give rise to liability for retaliation.

Summary judgment is denied with respect to the FMLA retaliation claim. On October 5, 2016, Plaintiff had a meeting with Benatar and Purtell in Beaverton, Oregon, to discuss the PAP. Purtell testified that he ended the meeting because he had a strong sense that it "was not going to be productive." Reed and Benatar likewise testified that it was Purtell who ended the October 5 meeting. Plaintiff then flew from Beaverton to New York and immediately went on an FMLA leave of absence from October 6, 2016, until November 26, 2016, during that time working on issues related to her mental health. Benatar, who participated in the decision to terminate Plaintiff, testified that she was "disappointed" that Plaintiff took the FMLA leave, because it left her department short-staffed and did not help Plaintiff "get . . . to the next level." Plaintiff's termination letter, which was prepared by Benatar, asserts that Plaintiff "refuse[d] to productively participate in [the October 5 meeting]," and "abruptly left the conversation and changed [travel plans] to return to New York from Beaverton early, presumably in an effort to avoid the conversation."

A reasonable jury could find that Plaintiff's exercise of her rights under the FMLA (*i.e.*, her taking of FMLA leave from October 6, 2016, to November 26, 2016) was a "negative factor" in an adverse employment action (*i.e.*, her termination). *See Woods*, 864 F.3d at 169. Benatar prepared a termination letter expressly referencing Plaintiff's decision to leave work in Oregon to return to New York, knowing that Plaintiff had returned to New York to go on a leave of absence (and not to avoid a meeting that Benatar knew had been ended by Purtell, not by Plaintiff). Benatar's stated disappointment in Plaintiff for taking the FMLA leave strengthens the inference that Plaintiff's exercise of her rights under the FMLA was a negative factor in her termination.

The Complaint also alleges that Defendants interfered with Plaintiff's utilization of FMLA leave. "[A]n employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Woods*, 864 F.3d at 166. Plaintiff has not provided any evidence that Defendants prevented or impeded her utilization of FMLA leave, and Plaintiff opposes summary judgment only with respect to her FMLA retaliation claim. Accordingly, summary judgment is granted with respect to the FMLA interference claim.

E.  **ERISA - COBRA Notification**

Summary judgment is denied with respect to the COBRA notification claim. Under COBRA, "an employer must notify a terminated employee of the right to elect continuing health coverage under the employer's group rate." *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016). This requirement is satisfied when "the administrator has sent the notice by means reasonably calculated to reach the recipient," including by mail "to the covered employee's last known address." *Id.* (citations omitted).

At the time of her termination, Plaintiff understood that her address on file was 111 8th Avenue, New York, New York -- the address of Nike's New York office. On November 30, 2016, during the phone call in which Benatar notified Plaintiff of her termination, Plaintiff was asked whether she wanted to provide an updated home address. Plaintiff responded that she would provide the address by e-mail to Brittany Miller in Employee Relations. Plaintiff sent her address to Miller by e-mail the following day. On December 5, 2016 (Plaintiff's effective termination date), Nike sent Plaintiff's 8th Avenue Nike address to third party Willis Towers Watson, which in turn sent the address to third party WageWorks, Inc. ("WageWorks") on December 12, 2016. WageWorks attempted to send the COBRA election notice to Plaintiff on

14

December 13, 2016 at the 8th Avenue Nike address, not the address listed in Plaintiff's e-mail to Miller. A reasonable jury could find that Nike failed to update Plaintiff's address on file, and therefore the notice was not sent "by means reasonably calculated to reach the recipient." *See Vangas*, 823 F.3d at 183.

Defendants argue that summary judgment is warranted because Plaintiff's e-mail to Miller did not specify that she was requesting that Nike change her "home" address from 111 8th Avenue to the address listed in the e-mail. Regardless of whether such a formality is actually necessary for Plaintiff to sustain her COBRA notification claim, a reasonable jury could find that Plaintiff's e-mail did in fact constitute such a request. Benatar and Gillespie asked Plaintiff to provide an updated "home" address, Plaintiff said she would send the address by e-mail to Miller and Plaintiff did so the following day.

Defendants also argue that summary judgment is warranted because Nike's employee handbook, dated July 1, 2016, provides: "Please notify Nike and [WageWorks] in writing of any address changes to ensure proper delivery of benefits materials." This argument is unavailing. First, it is far from clear that Plaintiff's failure to provide WageWorks with an updated address, having already provided Nike with the address, establishes as a matter of law that the COBRA notice was sent "by means reasonably calculated to reach the recipient," *Vangas*, 823 F.3d at 183, and Defendants cite no authority in support of this contention. Second, Plaintiff testified that she had never seen the July 1, 2016, version of the employee handbook, and Defendants have not established that Plaintiff was obligated to review it or was even provided with a copy. If Defendants contend that Plaintiff was required to comply with the handbook provision, then the question of whether Plaintiff was on notice of the provision goes to the reasonableness of Nike's procedures and, in any event, is a fact issue not resolvable on summary judgment.

15

### F. ERISA - Denial of Continuing Coverage

Plaintiff alleges a second violation of ERISA related to Defendants' alleged denial of continuing health coverage benefits. *See* 29 U.S.C. 1161(a) ("The plan sponsor of each group health plan shall provide . . . that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan."). Defendants assert the affirmative defense of failure to exhaust administrative remedies. *See Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 439 (2d Cir. 2006) (stating that failure to exhaust administrative remedies when bringing a claim for benefits under ERISA is an affirmative defense subject to waiver, estoppel, futility and other equitable considerations). Specifically, Defendants contend that Plaintiff never appealed her denial of coverage, as she was required to do within 180 days of receiving her notice of appeal.

Summary judgment is denied with respect to the denial of continuing coverage claim. "Defendants who give inadequate notice of the right to administratively appeal a denial of benefits are . . . precluded from . . . asserting failure to exhaust administrative remedies as a defense." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 324 (2d Cir. 2004); *accord Kowalchyn v. Lewis*, No. 16 Civ. 7284, 2018 WL 2081858, at *6 (S.D.N.Y. Mar. 28, 2018). The parties dispute whether the appeal notice was sent to the correct address. Plaintiff testified that she never received the appeal form, and points to evidence that she had previously attempted to update her addressing with WageWorks to no avail. A reasonable jury could find that Plaintiff was not given adequate notice of her right to appeal.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to the FMLA interference claim, and is DENIED as to all other claims.

The Clerk of Court is respectfully directed to close the motion at Docket No. 80.

Dated: May 31, 2019
       New York, New York

                                                    **LORNA G. SCHOFIELD**
                                                **UNITED STATES DISTRICT JUDGE**